Kyle Mothershead
**Relentless Advocacy PLLC**
7000 Executive Center Drive
Suite 240
Brentwood, TN 37027
(615) 891-3901
kyle@relentlesslaw.com

Thomas B. Harvey*
**Law Offices of Thomas B. Harvey**
365 E. Avenida de Los Arboles #226
Thousand Oaks, CA 91360
tbhlegal@proton.me
(805) 768-4440

Akeeb Dami Animashaun*
355 S. Grand Ave, Suite 2450
Los Angeles, California 90071
dami@animashaun.me
929-266-3971

*Counsel for Plaintiffs and Proposed Class*

*Pro hac vice application forthcoming

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| MICHELLE SHOEMAKER and LINDA WHITAKER, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FRANK STRADA, in his official capacity as Commissioner of the Tennessee Department of Corrections<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMAND |

1. For nearly a decade, the Tennessee Department of Corrections ("TDOC") encouraged Plaintiffs and other incarcerated people to purchase music, games, and other digital media on JPay tablets, assuring them that the purchased content was their permanent property, through a program it authorized, promoted, and profited from. In March 2025,

CLASS ACTION COMPLAINT

TDOC abruptly switched to a new tablet provider after receiving a more financially advantageous contract but assured Plaintiffs that they would receive compensation for their purchased content after the transition. TDOC then reneged, confiscated all JPay tablets, barring them from accessing digital content they continued to own, and provided no compensation. Plaintiffs bring this action on behalf of themselves and all others similarly situated seeking declaratory and injunctive relief to prevent Defendant from continuing to enforce a policy that prohibits them from accessing their digital media property.

## JURISDICTION AND VENUE

2. This is a civil rights action brought pursuant to 42 U.S.C. § 1983 and the Takings Clause and Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, as this action arises under the Constitution and laws of the United States.

4. Venue is proper in the Middle District of Tennessee pursuant to 28 U.S.C. § 1391(b)(1) because the Defendant works and resides in this District. The Women's Therapeutic Residential Center ("WTRC") is part of TDOC, which is located in Davidson County and lies within the Middle District of Tennessee.

## PARTIES

5. Plaintiffs Michelle Shoemaker and Linda Whitaker are adult citizens of the State of Tennessee and were at all relevant times residents of WTRC.

6. Defendant Frank Strada is the Commissioner of TDOC, sued in his official capacity. In his official capacity, he is responsible for the policies, practices, and customs of the TDOC, including the Digital Property Confiscation Policy that resulted in the taking of Plaintiffs' and Class Members' lawfully purchased digital property without just compensation.

## FACTUAL BACKGROUND

**I. TDOC's Authorized Digital Media Program**

7. Beginning in or around 2016, the TDOC, through its authorized vendor JPay, Inc., made digital media tablets available to residents at the WTRC. Through these JPay tablets, residents could purchase music, games, and other digital content, communicate via electronic messaging, and preserve personal photographs.

8. The TDOC touted this pilot program as part of its therapeutic offerings at WTRC.

9. TDOC's authorization of and participation in this program is confirmed by its sworn statements in prior federal litigation concerning the tablet program at WTRC.

10. TDOC authorized, promoted, and actively participated in the JPay Tablets program.

11. TDOC received commissions and other financial benefits from the sale of digital media content to residents through JPay.

12. TDOC reviewed and approved all marketing materials and advertising related to the Digital Media Program at WTRC.

13. JPay marketed songs in ordinary ownership-style purchase language, affirmatively representing continuity and retention across devices. JPay informed WTRC residents and their families that they were purchasing digital content, downloading all of that content to their devices, and that they would retain all of it if they purchased new replacement devices, were transferred to a new prison, and after they left the WTRC. This included emails, photos, and other items sent to them by email.

14. JPay's Terms of Sale described the music players and purchased content as property of the purchasing resident.

15. TDOC works with JPay to promote the program to WTRC residents. Advertisements and other materials distributed to residents represented that digital content purchased through the JPay tablets belonged to the purchasing resident.

3
CLASS ACTION COMPLAINT

16. JPay assured residents they would be able to store and personally manage all of their content on their tablets and that if they switch devices all previously purchased digital content would be retained and transferred to the new device.

17. TDOC staff at the WTRC and other TDOC facilities made direct representations to residents, including Plaintiffs, that their purchased digital content was their property and would always belong to them, even after their incarceration ended.

## II. TDOC's Vendor Change and Financial Motivation

18. In December 2023, the Tennessee Department of General Services issued a memorandum recommending that TDOC join a National Association of State Procurement Officials ("NASPO") cooperative purchasing agreement for communications services, noting that tablets would be provided to people in prison "at no cost to the state." Increased revenue, not security or resident welfare, was the stated rationale for the vendor transition.

19. On or about May 31, 2024, approximately ten months before the JPay contract at WTRC expired, TDOC signed a NASPO master agreement with ViaPath Technologies, Inc. f/k/a Global Tel Link Corporation ("ViaPath").

20. The ViaPath contract commenced on or about June 10, 2024.

21. The ViaPath contract is structured as an increased revenue-generating arrangement under which TDOC pays nothing and ViaPath pays TDOC.

22. A Fiscal Review Committee contract summary publicly filed with the Tennessee General Assembly demonstrates the no-cost-to-state, commission-based structure of the arrangement.

23. Under the ViaPath contract, TDOC receives substantial ongoing financial benefits, including: (a) a commission of approximately 19% on all phone and tablet-based call revenue; (b) guaranteed minimum annual payments of approximately $2,225,000; and (c) a commission of approximately 5% on all entertainment content revenue, including music, games, and movies accessed on ViaPath tablets, after the first year of tablet availability.

CLASS ACTION COMPLAINT

24. These financial benefits flow directly and continuously to TDOC as a consequence of the vendor transition and the residents' ongoing use of ViaPath tablets and services.

25. ViaPath's tablet entertainment model differs fundamentally from JPay's.

26. While JPay operated on a one-time purchase model, under which residents paid a fixed price for ownership of digital content, ViaPath operates on a per-minute streaming and access model, under which residents pay approximately $0.03 to $0.05 per minute to access entertainment content, and approximately $0.20 per incoming message plus additional fees for photographs and video messages.

27. The transition from a permanent-ownership model to a per-minute access model is not incidental; it is the mechanism by which TDOC and ViaPath generate commission revenue.

28. TDOC had approximately nine months between signing the ViaPath contract and the expiration of the JPay contract to design and implement a mechanism to transfer residents' purchased digital content or to provide compensation therefor. TDOC did neither.

## III. TDOC Policy Denying WTRC Residents' Access to their Digital Media Property

29. On or about March 11, 2025, Defendant informed members of the "inmate council" ("the Council") of their plans to implement a policy under which all existing JPay tablets at the WTRC were to be confiscated and replaced with ViaPath tablets (the "Digital Property Confiscation Policy").

30. The Council is composed of resident leaders within the WTRC representing different blocks. The Council was given a letter explaining the process and promising the residents compensation for the loss of their digital property.

31. Plaintiffs Shoemaker and Whitaker, as well as other residents of the WTRC, immediately wrote to Assistant Commissioner of Prisoner Operations, Linda Thomas, to

inform TDOC of the impending and unlawful deprivation of access to their property and the financial and emotional harm such deprivation would cause.

32. Commissioner Thomas never responded. Nor did any TDOC official.

33. On March 31, 2025, Defendants confiscated Plaintiffs' JPay tablets. Residents at the WTRC had no choice but to allow the confiscation. TDOC threatened to shut down the entire prison if anyone failed to comply.

34. Unlike residents who had previously transferred to another prison, residents with JPay tablets were not given the opportunity to ship their tablet home or to a friend or relative. Unlike residents who had been released prior to March 31, 2025, they could not take their JPay tablets with them.

35. As a direct result of the Digital Property Confiscation Policy, Plaintiffs and the Class were unable, and continue to be unable, to access the digital content they lawfully purchased and continue to own on their JPay tablets, including music files, games, and other paid content.

36. TDOC chose to enact this policy to block access to purchased digital content in spite of the fact that other prisons had gone through the same transition, with the same two vendors, and successfully provided a mechanism for people who purchased digital content to maintain access on new devices.

37. Plaintiffs and the Class also lost access to emails, photos, and other attachments when their property was confiscated and taken. This included photos of children, parents, and other family members who died during their incarceration. For some residents, the emails TDOC took included the last words ever communicated to them by their mother or their daughter.

38. The new ViaPath tablets provided to residents did not contain, replicate, or restore any of the digital content that Plaintiffs and the Class had previously purchased or received.

6
CLASS ACTION COMPLAINT

39. Defendant has provided no mechanism for residents whose JPay tablets were confiscated to transfer their content to the replacement ViaPath tablets or elsewhere.

40. Defendant provided no credits or refunds to residents whose JPay tablets, and the purchased content stored on them, were taken, to enable them to repurchase content on the ViaPath tablets.

41. Residents whose tablets were confiscated received no residual value for their purchased digital content to which Defendant continues to bar access.

42. The digital content they purchased on the JPay tablets cannot be played, transferred, shared with another person, sent outside the facility for use by a family member, or accessed without additional modifications they must pay for.

## IV. TDOC Acknowledged Its Obligation to Compensate Residents for Barring Access to Their Purchased Digital Property

43. Prior to the implementation of the Digital Property Confiscation Policy, TDOC informed residents that Securus will be giving TDOC credits for buying back the tablets and that TDOC will grant "some sort of credit to the residents for them to use on the new tablets."

44. Through this communication, TDOC acknowledged that residents were entitled to compensation upon the confiscation of their JPay tablets which barred access to their purchased digital content, and that residents would receive "some sort of credit" to use on the new ViaPath tablets.

45. After confiscating the JPay tablets, TDOC failed to provide any credit or any other compensation to Plaintiffs or Class Members.

46. TDOC issued no credits on the ViaPath tablets, provided no reimbursement, and established no mechanism to retrieve, transfer, or otherwise compensate residents for barring access to their purchased digital content.

7
CLASS ACTION COMPLAINT

47. On information and belief, Securus provided TDOC with credits or payment in connection with the hardware buyback described in TDOC's communication to residents. TDOC retained any such payment without passing any portion of it to residents as promised.

## V. TDOC Confiscated Plaintiffs' JPay Tablets and Continues to Bar Access to Purchased Digital Content They Own

48. Plaintiffs, and Class Members, purchased a non-exclusive, non-transferable right to use purchased digital content on JPay tablets while incarcerated—a right whose entire value consisted of the ability to access and enjoy that content while in prison.

49. Plaintiff Michelle Shoemaker purchased her first tablet when the TDOC began the program in 2016. She owned several tablets between 2016 and March 31, 2025.

50. She ordered the tablet from JPay. JPay sent the tablet to TDOC, where it was logged as her personal property.

51. To use the tablet, Shoemaker was required to connect it to the JPay kiosk in the WTRC installed by TDOC and JPay.

52. The first time she connected to the kiosk, she encountered a lengthy message but due to kiosk usage time limits imposed by WTRC, she was unable to read the message in full. She requested that the message be printed, but TDOC refused. That was the only occasion on which she ever saw the message.

53. Shoemaker repeatedly requested contract details from TDOC officials. TDOC never provided those details, but told her the downloads, photos, and emails were her property.

54. Between 2016 and March 31, 2025, Shoemaker purchased digital media content on her JPay tablet, including thousands of songs at an approximate cost of $1.75 per song, nearly 50 games at an approximate cost of $7.99 each, and other digital content, for a total expenditure exceeding $1,000.

8
CLASS ACTION COMPLAINT

55. Shoemaker stored personal photographs and family communications on her JPay tablet. She had hundreds of emails with attachments, and hundreds of pictures.

56. During her time at the WTRC, Shoemaker's father, youngest daughter, and mother, all passed away. The property stored on her JPay tablet included photographs and emails from each of them, including the final words her mother ever wrote to her.

57. Each time Shoemaker's JPay tablet required replacement, she purchased a new tablet from JPay, received it from TDOC, and connected it to the kiosk. On each occasion, all of her digital property was transferred to the new JPay tablet. Prior to March 31, 2025, Shoemaker never lost access to the property she purchased, owned, and stored on her JPay tablets.

58. Each time Shoemaker purchased a song or game, she was told that the purchase was downloaded to her JPay tablet and constituted her property. All advertisements described the transaction as a purchase and otherwise used the language of ownership. She never saw any indication that the content was rented or licensed, or that it was not hers to own in perpetuity.

59. TDOC confiscated Shoemaker's JPay tablet on March 31, 2025, thereby barring her from accessing all content she purchased and continues to own on the tablet.

60. Plaintiff Linda Whitaker owned several JPay tablets during her time at WTRC.

61. Whitaker ordered the tablet from JPay. JPay sent the tablet to TDOC, where it was logged as her personal property.

62. To use the tablet, Whitaker was required to connect it to the JPay kiosk in the WTRC installed by TDOC and JPay.

63. The first time she connected to the kiosk, she encountered a lengthy message but due to kiosk usage time limits imposed by WTRC, she was unable to read the message in full. She requested that the message be printed, but TDOC refused. That was the only occasion on which she ever saw the message.

9
CLASS ACTION COMPLAINT

64. Whitaker repeatedly requested contract details through the inmate council from TDOC officials. TDOC never provided those details, but told her the downloads, photos, and emails were her property.

65. Whitaker purchased digital media content on her JPay tablet, including hundreds of songs at an estimated cost of approximately $1.79 per song, more than 30 games at an estimated cost of approximately $7.99 each, and other digital content, for a total expenditure of nearly $1,000.

66. Whitaker stored personal photographs and family communications on her JPay tablet. This includes irreplaceable photos and emails from family members who died during her incarceration.

67. Each time Whitaker's JPay tablet required replacement, she purchased a new tablet from JPay, received it from TDOC, and connected it to the kiosk. On each occasion, all of her digital property was transferred to the new JPay tablet. Prior to March 31, 2025, Whitaker never lost access to the property she purchased, owned, and stored on her JPay tablets.

68. Each time Whitaker purchased a song or game, she was told that the purchase was downloaded to her JPay tablet and constituted her property. All advertisements described the transaction as a purchase and otherwise used the language of ownership. She never saw any indication that the content was rented or licensed, or that it was not hers to own in perpetuity.

69. TDOC confiscated Whitaker's JPay tablet on March 31, 2025, thereby barring her from accessing all content she purchased and continues to own on the tablet.

## VI. Plaintiffs Exhausted Their Administrative Remedies

70. Plaintiffs fully exhausted all available administrative remedies as required under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), prior to bringing this action.

71. Plaintiff Shoemaker filed a grievance on or about April 3, 2025, complaining that TDOC barred her from accessing her digital property without compensation. The grievance was denied. Shoemaker filed a timely appeal on or about April 14, 2025. TDOC denied that appeal, again providing no relief.

72. Plaintiff Whitaker filed a grievance with TDOC on or about April 3, 2025, complaining that TDOC barred her from accessing her digital property without compensation. The grievance was denied. Whitaker filed a timely appeal on or about April 14, 2025. TDOC denied that appeal, again providing no relief.

73. Hundreds of other residents also filed grievances concerning Defendants' denial of access to their purchased and owned digital media property. Those grievances were likewise denied. On or about April 14, 2025, and pursuant to TDOC instructions, all grievances were consolidated and subsequently denied. Plaintiff Shoemaker appealed on behalf of the consolidated group, also in accordance with TDOC instructions. That appeal was denied as well.

## CLASS ACTION ALLEGATIONS

74. Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2).

75. The proposed Class is defined as: All people currently and previously incarcerated at a TDOC facility who purchased digital media content through TDOC's authorized JPay digital media program prior to March 31, 2025, and whose JPay tablets were confiscated and replaced with ViaPath tablets without transfer of their purchased digital content or compensation therefor.

76. **Numerosity.** The Class is so numerous that joinder of all members is impracticable. The WTRC has an operating capacity of over 1,000 residents. JPay program records maintained by TDOC and JPay will identify each Class member and the content she purchased. Because TDOC provided no credits, no transfer, and no compensation of any kind

11
CLASS ACTION COMPLAINT

to any resident, every TDOC resident who purchased JPay digital content prior to March 31, 2025, is a member of the Class. The Class is readily ascertainable from TDOC and JPay records.

77. **Commonality.** There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members, including: (a) whether TDOC's Digital Property Confiscation Policy, which bars Plaintiffs from accessing their purchased digital content, constitutes an unconstitutional taking; (b) whether Class members possess a constitutionally protected property interest in the digital media content they purchased and own; (c) whether TDOC's acknowledgment of an obligation to provide credits—coupled with its failure to do so—independently violates Plaintiffs' constitutional rights; and (d) whether TDOC's conduct violates the Substantive Due Process Clause of the Fourteenth Amendment.

78. **Typicality.** Plaintiffs' claims are typical of those of the Class. Like all Class members, Plaintiffs purchased digital content through TDOC's authorized JPay program, were told that they permanently owned that content, were informed that they would receive credits upon the tablet transition, and suffered the same deprivation—being barred from accessing their purchased and owned property without compensation—as a result of the Digital Property Confiscation Policy.

79. **Adequacy.** Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have no interests adverse to those of the Class, and Plaintiffs' counsel are experienced in class action and constitutional rights litigation.

80. Class treatment is appropriate under Rule 23(b)(2) because Defendants have acted on grounds that apply generally to the Class. Specifically, through the uniform implementation of the Digital Property Confiscation Policy and the uniform failure to provide access to Class members' digital property, credits, or compensation. Final injunctive relief or corresponding declaratory relief is appropriate with respect to the Class as a whole.

# CLAIMS FOR RELIEF

## COUNT I – VIOLATION OF THE TAKINGS CLAUSE
### Fifth and Fourteenth Amendments to the US Constitution
### 42 U.S.C. § 1983

81. Plaintiffs re-allege and incorporate by reference each and every allegation in the preceding paragraphs.

82. Plaintiffs' claim for relief on this Count is predicated upon 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges and immunities secured by the Fifth and Fourteenth Amendments to the U.S. Constitution and the laws of the United States, and upon 42 U.S.C. § 1988, which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. § 1983.

83. The Takings Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V.

84. Plaintiffs and the Class have a constitutionally protected property interest in the digital property they purchased and owned. They have a right to access and enjoy the digital content they purchased through TDOC's authorized JPay program while incarcerated. This right was purchased for valuable consideration (at prices of approximately $1.59 per song and equivalent amounts for other content), was described as a "permanent" download, and constitutes cognizable property under the Takings Clause.

85. Defendant's Digital Property Confiscation Policy constitutes a taking. Following confiscation, Plaintiffs and the Class were barred, and continue to be barred, from accessing the digital content they purchased and continue to own.

86. The taking was for public use. TDOC implemented the Digital Confiscation Policy to increase revenue. It received, and continues to receive, direct and substantial financial benefit from its implementation.

13
CLASS ACTION COMPLAINT

87. TDOC's own written communication to residents acknowledges that residents were entitled to just compensation in the form of "some sort of credit" upon confiscation of their tablets, which barred them from accessing their purchased and owned digital media content. This constitutes an express acknowledgment by TDOC that residents held property interests of value that warranted compensation or another remedy when access to that property was barred, none of which it ever provided.

## COUNT II – VIOLATION OF SUBSTANTIVE DUE PROCESS
### Fourteenth Amendment; 42 U.S.C. § 1983

88. Plaintiffs re-allege and incorporate by reference each and every allegation in the preceding paragraphs.

89. The Due Process Clause of the Fourteenth Amendment protects against governmental action that is arbitrary, capricious, or without rational relationship to a legitimate governmental interest.

90. Plaintiffs and the Class possess a constitutionally protected property interest in their purchased and owned digital media content and other property stored on their JPay tablets.

91. Defendant's Digital Property Confiscation Policy is a broad-based regulation applicable to all WTRC residents rather than a ministerial or administrative act directed at specific individuals. As such, it is legislative in character, and traditional property rights trigger substantive due process protections without requiring a showing that the action shocks the conscience.

92. Defendant's Digital Property Confiscation Policy is arbitrary and capricious in that:

a. It was implemented without any legitimate security justification. TDOC has acknowledged that permitting residents to retain access to their lawfully purchased music and

CLASS ACTION COMPLAINT

digital content presents no security concern, and residents continue to be permitted to possess digital tablets and access digital content;

b. The stated rationale for the vendor switch was administrative convenience and time savings to the state. There was no security, rehabilitation, or penological purpose related to resident welfare;

c. Defendant had numerous feasible alternatives available that would have permitted residents to retain access to their lawfully purchased property or receive compensation therefor, and pursued none of them;

d. The policy serves no legitimate penological purpose given that residents continue to be permitted to possess and use digital content. They simply cannot have the content they previously purchased and continue to own; and

e. TDOC made a written promise to provide credits to residents upon confiscation of their tablets, then broke that promise without explanation or recourse, compounding the arbitrary and capricious character of the deprivation.

93. The Digital Property Confiscation Policy does not bear a substantial relation to any legitimate government interest. It constitutes an arbitrary and capricious exercise of governmental power in violation of the Substantive Due Process Clause of the Fourteenth Amendment.

**COUNT III – DECLARATORY JUDGMENT**
**28 U.S.C. §§ 2201–2202; 42 U.S.C. § 1983**

94. Plaintiffs re-allege and incorporate by reference each and every allegation in the preceding paragraphs.

95. An actual and justiciable controversy exists between Plaintiffs and Defendant regarding: (a) whether Plaintiffs and the Class hold a constitutionally protected property interest in the digital media content they purchase and own; (b) whether Defendant's Digital Property Confiscation Policy, which bars access to that property, constitutes an

unconstitutional taking; (c) whether Defendant's written promise of credits created an enforceable obligation that Defendant has failed to honor; and (d) whether Defendant's policy violates the Substantive Due Process Clause.

96. A declaratory judgment resolving these questions will serve a useful purpose in clarifying and settling the legal relations at issue, will terminate and afford relief from the uncertainty and controversy giving rise to this action, and will provide the foundation for injunctive relief.

97. Pursuant to 28 U.S.C. §§ 2201–2202, Plaintiffs are entitled to a declaration that Defendant's Digital Property Confiscation Policy violates the Takings Clause of the Fifth Amendment as made applicable to the states through the Fourteenth Amendment, and that Defendant's Digital Property Confiscation Policy violates the Substantive Due Process Clause of the Fourteenth Amendment.

## DEMAND FOR JURY TRIAL

98. Plaintiffs hereby demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all Class Members, respectfully request that this Court:

A. Certify this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2), designating Plaintiffs Shoemaker and Whitaker as class representatives and appointing their counsel as class counsel;

B. Issue a declaratory judgment that Defendant's Digital Property Confiscation Policy violates the Takings Clause of the Fifth Amendment;

C. Issue a declaratory judgment that Defendant's Digital Property Confiscation Policy violates the Substantive Due Process Clause of the Fourteenth Amendment;

D. Issue a declaratory judgment that Defendant's written commitment to provide residents with credits upon confiscation of their JPay tablets created an obligation that Defendant has failed to honor;

E. Enter preliminary and permanent injunctive relief directing Defendant to restore to Plaintiffs and the Class all digital content, including music, games, and other paid and unpaid content, that was rendered inaccessible as a result of the Digital Property Confiscation Policy, by transferring such content to the ViaPath platform or otherwise making it accessible to Plaintiffs and the Class in some other form;

16
CLASS ACTION COMPLAINT

F. In the alternative, order Defendant to provide Plaintiffs and the Class the credits that TDOC represented it would provide in connection with the tablet transition;

G. Award Plaintiffs and the Class their reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable provision of law;

H. Retain jurisdiction to monitor and enforce compliance with any orders or injunctions issued by this Court; and

I. Grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated: March 30, 2026

*/s Kyle Mothershead*
Kyle Mothershead
TN BPR 22953
Relentless Advocacy PLLC
7000 Executive Center Drive
Suite 240
Brentwood, TN 37027
(615) 891-3901
kyle@relentlesslaw.com

Thomas B. Harvey*
Law Offices of Thomas B. Harvey
365 E. Avenida de Los Arboles #226
Thousand Oaks, CA 91360
tbhlegal@proton.me
(805) 768-4440

Akeeb Dami Animashaun*
355 S. Grand Ave, Suite 2450
Los Angeles, California 90071
dami@animashaun.me
929-266-3971

*Counsel for Plaintiffs and Proposed Class*

*\*Pro hac vice application forthcoming*